United States District Court
Southern District of Texas
**ENTERED**
February 12, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PABLO ERNESTO VILLARREAL, JR, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00214 |
| | § | |
| LORIE DAVIS, *et al*, | § | |
| | § | |
| Respondents. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner Pablo Ernesto Villarreal, Jr., is an inmate in the Texas Department of Criminal Justice and is currently incarcerated at the Robertson Unit in Abilene, Texas. Villarreal filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 17, 2020.[1] (D.E. 1, 2). Villarreal challenges his conviction for possession with intent to deliver cocaine, raising claims that his conviction was the result of an illegal search and seizure and that trial counsel performed deficiently at the suppression hearing. Respondent filed a motion for summary judgment, to which Villarreal has responded. (D.E. 13, 14). As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Villarreal's habeas corpus petition be denied. It is further recommended that a Certificate of Appealability ("COA") be denied.

---

[1] Villarreal stated under penalty of perjury that he placed his petition in the prison mail system on August 17, 2020, and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998), and Rule 3, Rules Governing Section 2254 Cases (discussing the mailbox rule).

## I.   JURISDICTION

This court has jurisdiction pursuant to 28 U.S.C. § 1331 and venue is appropriate because Villarreal was convicted in Victoria County, Texas.  28 U.S.C. § 2254(a); 28 U.S.C. § 124(b)(6); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000).

## II.   BACKGROUND

### a.   Petition and Claims

In his § 2254 petition, Villarreal raises claims that trial counsel was ineffective for failing to raise a particular argument at the suppression hearing and that his conviction was the result of an illegal search and seizure.  (D.E. 1 at 6-7; D.E. 2 at 8-15).  First, Villarreal contends that trial counsel was ineffective for failing to research and argue that the search of his vehicle violated the Fourth Amendment because Villarreal only gave consent to search the trailer, not the truck.  (D.E. 1 at 6; D.E. 2 at 2-4, 8-12).  He further argues that, had counsel raised this argument, his motion to suppress would have been granted and he would have proceeded to trial instead of pleading guilty.  (D.E. 1 at 6; D.E. 2 at 3).  Thus, Villarreal contends that his guilty plea was not knowing and voluntary.  (D.E. 1 at 6; D.E. 2 at 4).  Second, Villarreal asserts that his Fourth Amendment rights were violated because the traffic stop that led to the search of his vehicle was unjustified.  (D.E. 1 at 6-7; D.E. 2 at 4-5, 12-13).  Specifically, Villarreal argues that the line to stop at was not clearly marked. (*Id.*).  He contends that the state court's determination of the facts was unreasonable because it was mistaken about when the photos of the stop sign and painted lines were taken.  (D.E. 1 at 6-7; D.E. 2 at 4-5, 13-15).

**b.    State Court Records**

Villarreal was charged in an indictment with one count of possession with intent to deliver cocaine, including adulterants and dilutants, in an amount of 400 grams or more, in violation of Tex. Health & Safety Code § 481.112(f).  (D.E. 12-2 at 6).

Villarreal moved to suppress all evidence found as a result of the search that led to his arrest, contending that the arrest and search were made without a warrant or probable cause and violated the Fourth Amendment.  (*Id.* at 9-10).

At the suppression hearing, Texas State Trooper Wayne Cipriani testified to the following.  (D.E. 12-4 at 14).  Prior to coming in contact with Villarreal, Cipriani had received information from a special agent that a vehicle matching the description of Villarreal's truck was possibly loaded with narcotics.  (*Id.* at 27).  As Cipriani approached, Villarreal stopped at a stop sign and stop line that was clearly marked and visible, but stopped five to six feet beyond the line.  (*Id.* at 29-30).  Cipriani decided to conduct a traffic stop for this violation.  (*Id.* at 45-46).  After stopping Villarreal, Cipriani looked at his logbook and discussed where he was going and what he was doing.  (*Id.* at 50-51).  He noticed that the truck was from Mission, Texas, and was going on a relatively long trip without any cargo, which he found suspicious.  (*Id.* at 51-52).  Villarreal stated that his tarps had been stolen the previous week, but his logbook showed that he was not working the previous week.  (*Id.* at 53).  Cipriani also noticed that Villarreal was shaking and highly nervous.  (*Id.*).  During his inspection of the truck, Cipriani smelled fresh paint, which was also suspicious because the body of the truck did not appear to have been repainted.  (*Id.*

at 55).  Fresh paint could be used to hide false compartments.  (*Id.* at 55-56).  Villarreal stated that only the hitch area had been repainted.  (*Id.* at 56).

Cipriani further testified that he asked for permission to search the vehicle after around 17 minutes.  (*Id.* at 58).  During that time, he also received information on the truck and trailer, Villarreal, and any border crossings or checkpoint scans.  (*Id.*).  Villarreal gave consent to search the vehicle.  (*Id.* at 59).  At the time, Cipriani had a suspicion of criminal activity based on the totality of the circumstances, including Villarreal not having any cargo and losing money, which did not make sense given Cipriani's other interactions with 18-wheeler trucks.  (*Id.* at 60-61).  Further, Cipriani told Villarreal he was going to give him a warning, but Villarreal's nervousness did not subside.  (*Id.* at 61).  The paint smell and inconsistency in Villarreal's story about the tarps being stolen were also factors.  (*Id.* at 62-63).  Villarreal never withdrew consent to search, and the search lasted somewhere around an hour and a half.  (*Id.* at 63).

Cipriani further testified that the search uncovered kilograms of cocaine in two false compartments under the cab of the truck.  (*Id.* at 64).  The boxes were suspicious to him because he had never seen anything like them when searching other trucks.  (*Id.*).  Further, the paint looked fresh to him, and the boxes were covered in mud splatter that did not coincide with how mud could actually get on them.  (*Id.* at 66).  Cipriani drilled a hole on the boxes and was able to see bundles of cocaine inside.  (*Id.* at 69-70).

On cross-examination, Cipriani testified that he and his partner had seen Villarreal at a truck stop near where they pulled him over.  (*Id.* at 79).  At that point, he thought it could be the vehicle he received the tip about.  (*Id.* at 82).  Cipriani left the truck stop and

4

waited in a parking lot to see if Villarreal was going to leave the truck stop.  (*Id.* at 83).

One of the Google Maps pictures introduced into evidence indicated that it was taken in

August 2013, four months after the traffic stop.  (*Id.* at 92).[2]  Cipriani stated that he could

make out the stop line in that picture, although he acknowledged that there were several

feet in the middle of the line that were obscured.  (*Id.* at 94).  Just before Cipriani asked for

consent to search, he asked if Villarreal was carrying any large amounts of drugs, meth, or

heroin.  (*Id.* at 115).  Cipriani denied that the tip was the primary reason for continuing to

detain Villarreal and search the truck.  (*Id.* at 125).

Michael Walsh, an engineer for the Texas Department of Transportation, testified

to the following.  (D.E. 12-5 at 10).  He oversaw maintenance construction and day-to-day

operations of state roads, including painting.  (*Id.* at 11).  The volume of traffic at the stop

sign where the traffic violation occurred could cause the stop line to disintegrate.  (*Id.* at

14).  This was particularly true due to the nature of turns being made at that location and

the heavy truck traffic.  (*Id.* at 15).  Based on the picture of the stop line from August 2013,

it was possible that the line was visible in April 2013.  (*Id.* at 16).  The type of paint used

on this stop line often broke away in large chunks if it was not bonded properly to the

pavement.  (*Id.*).

In a legal memorandum filed after the hearing, Villarreal argued that the traffic stop

was unlawful because there was no white stop line that was visible.  (D.E. 12-2 at 47-50,

---

[2] The various pictures of the line are available in D.E. 12-6 at pages 6-9 and 52.  The image dated August 2013 is on page 52.

52-53).  He also raised arguments about the scope of his consent, but no argument regarding the distinction between the truck and the trailer.  (*Id.* at 56-57).

The trial court denied the motion to suppress, concluding that: (1) Cipriani testified truthfully and credibly; (2) that were adequate articulated facts at the time of the stop to believe that Villarreal violated the cited traffic law, § 544.010; (3) there was adequate corroboration of the anonymous tipster so that the totality of the information represented adequate articulable facts for an officer to suspect Villarreal of criminal activity; (4) Villarreal voluntarily gave consent to the search and did not limit or withdraw that consent; and (5) there was justification to prolong the detention.  (D.E. 12-2 at 66).

Villarreal pleaded guilty to the charge.  (*Id.* at 88-94).  As part of his plea, Villarreal indicated that he was doing so freely and voluntarily and that he was totally satisfied with counsel's performance.  (*Id.* at 88).  The court admonished him that he was pleading guilty to a first-degree felony that potentially carried a sentence up to life imprisonment and no less than five years' imprisonment.  (*Id.* at 92).  Villarreal still had the right to appeal the denial of the motion to suppress.  (*Id.* at 90, 95).  Villarreal was found guilty as charged in the indictment and sentenced to 50 years' imprisonment.  (*Id.* at 96).

On direct appeal to the Texas Thirteenth District Court of Appeals, Villarreal argued that: (1) the traffic stop was unlawful because no traffic violation occurred; (2) the search and seizure were unlawful because they were the result of a traffic detention that was prolonged beyond the conclusion of its legitimate purpose; and (3) officers exceeded the scope of Villarreal's consent to search his vehicle by dismantling the interior and drilling holes in the floor.  (D.E. 12-8 at 17-30).

6

The Court of Appeals affirmed his conviction.  (D.E. 12-13 at 1).  First, as to whether a traffic violation occurred, the court stated that Villarreal "emphasize[d] certain photographs dated from 2015" that showed a barely-visible stop line, but that Cipriani testified that the line was clearly visible in 2013.  (*Id.* at 9).  The court stated that the trial court found that the stop line was clearly marked in 2013 and that finding was entitled to "almost total deference" on appeal.  (*Id.*).  Second, as to whether the traffic stop was unlawfully prolonged, the court concluded that Cipriani identified several suspicious circumstances within a few minutes and pursued related lines of inquiry.  (*Id.* at 11-12).  Third, as to the scope of Villarreal's consent, the court concluded that he gave broad consent to search for large amounts of contraband and never placed any limitations on the scope of the search or withdrew consent.  (*Id.* at 15-16).  Accordingly, the court overruled Villarreal's arguments and affirmed the conviction.  (*Id.* at 18).

Villarreal filed a petition for discretionary review, but the Texas Court of Criminal Appeals ("TCCA") refused review.  (D.E. 12-19); *Villarreal v. State*, 565 S.W. 3d 919 (Tex. App.—Corpus Christi-Edinburg 2018).

Villarreal next filed an application for a writ of habeas corpus in state court under Article 11.07 of the Texas Code of Criminal Procedure.  (D.E. 12-31 at 5-39).  Villarreal raised the same ineffective-assistance claim as in his current petition, along with another claim.  (*Id.* at 10-12).

Villarreal's trial and appellate lawyer, Charles A. Banker, III, stated the following in an affidavit.  (*Id.* at 78).  He raised arguments regarding the scope of consent on appeal.

He did not remember whether the officer specifically asked for consent to search the truck or the trailer, so Villarreal was correct that he had not researched or argued that issue.  (*Id.*).

The state trial court concluded that counsel challenged the scope of consent under the Fourth Amendment and was not deficient.  (*Id.* at 79-82).  Accordingly, the trial court recommended that the amended Article 11.07 application be denied.  (*Id.* at 82).  The TCCA denied Villarreal's Article 11.07 application without written order.  (D.E. 12-22 at 1).

## III.  DISCUSSION

### a.   *Standard of Review*

#### i.   *Deference Afforded to State Court*

A § 2254 petition raising claims that were adjudicated on the merits in state court may not be granted unless the adjudication of the claim: (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of

8

the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Although "unreasonable" is difficult to define, the Supreme Court noted that it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). This is a difficult standard to meet. *Id.* at 102-03.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. Where a state court decides a prisoner's federal claim on the merits in a reasoned opinion, the federal court merely "reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Even summary rulings by state courts are afforded deference under § 2254(d), and in such cases, the relevant question is what arguments or theories could have supported the state court's decision. *Harrington*, 562 U.S. at 99, 102.

If a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with

clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id.* In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98.

    *ii.    Ineffective-Assistance Standard*

    To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). He must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable. *Id.* at 687-88.

    Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690.

To show prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 695.

Federal court review of a state court's denial of an ineffective-assistance claim is "doubly deferential" because the court must give deference both to counsel's performance and to the state court's conclusion. *Cullen*, 563 U.S. at 190. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

### b.   *Ineffective Assistance of Trial Counsel*

Respondent first argues that Villarreal waived his ineffective-assistance claim by pleading guilty and that his plea was knowing and voluntary. (D.E. 13 at 17-18). Respondent argues that Villarreal was informed of the nature of the charge against him and the potential sentencing range, which was all that was required to survive constitutional review. (*Id.* at 18). Respondent further argues that counsel's alleged mistakes were unrelated to Villarreal's understanding of the nature of the charges against him or the consequences of his pleas, meaning that this claim was waived when Villarreal pleaded guilty. (*Id.* at 23-25).

11

Villarreal responds that he only pleaded guilty because trial counsel advised him to, but trial counsel's advice was deficient because he failed to properly challenge the search of the truck. (D.E. 14 at 2). Villarreal argues that, had counsel made this argument, the evidence found during the search would have been suppressed and he could not have pleaded guilty. (*Id.* at 2-5).

In order to a plea to be found knowing and voluntary on federal habeas review, a defendant need only have understood the length of time he could receive in prison and the nature of the offense. *Bonvillain v. Blackburn*, 780 F.2d 1248, 1250 (5th Cir. 1986); *Hobbs v. Blackburn*, 852 F.2d 1079, 1082 (5th Cir. 1985). Official documents such as written plea agreements are entitled to a presumption of regularity and are given great weight. *United States v. McDaniels*, 907 F.3d 366, 371 (5th Cir. 2018).

When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, once a guilty plea is entered, all nonjurisdictional defects in the proceedings against a defendant are waived. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). Where a petitioner pleaded guilty, his Sixth Amendment challenge on collateral review is "limited to the issues of voluntariness and his understanding of the nature of the charges brought against him and the consequences of the plea." *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). A petitioner who pleaded guilty must not only show deficient performance, but also that he

12

would not have pleaded guilty but for the error. *Randle v. Scott*, 43 F.3d 221, 225 (5th Cir. 1995).

Here, Villarreal has not established that the state court's conclusion that counsel's performance was not deficient, and that he was not prejudiced by any deficiency, was contrary to, or an unreasonable application of, clearly established federal law. First, he has not established that his plea was not knowing and voluntary. Villarreal has raised no argument that he failed to understand the nature of the offense or the length of time he could receive in prison, and the record indicates that he was informed of both before he pleaded guilty. (D.E. 12-2 at 92). This is all that was necessary to render his plea knowing and voluntary for the purposes of federal habeas review. *Bonvillain*, 780 F.2d at 1250; *Hobbs*, 852 F.2d at 1082. Second, because he has not established that his plea was not knowing and voluntary, he has waived his claims about counsel's earlier failure to raise an argument about the scope of his consent to the search. *Smith*, 711 F.2d at 682. Following a guilty plea, a habeas petitioner may only raise claims of ineffective-assistance regarding the voluntariness of the plea and his understanding of the nature of the charges brought against him and the consequences of the plea. *Haynes*, 825 F.2d at 924. Villarreal's claim does not relate to his understanding of these issues, but rather to an earlier alleged deficiency at the suppression hearing. *See Tollett*, 411 U.S. at 267 (noting that a petitioner who pleaded guilty may not raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea).

Even if the claim is not waived, however, Villarreal has not established that he was prejudiced by counsel's failure to raise an argument that he only consented to a search of

13

the trailer, not the cab.  Villarreal would have known at the time of the suppression hearing that he consented only to a search of the trailer, and he knew that counsel raised no such argument, but he nonetheless chose to plead guilty and indicated that he was satisfied with counsel's performance.  (D.E. 12-2 at 88).  His contrary statement on collateral review that he would not have pleaded guilty but for counsel's failure to raise this argument is contradicted by the record and cannot be considered of probative evidentiary value.  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).  Accordingly, he has not shown, as he must, that but for counsel's failure to raise this claim, he would not have pleaded guilty.  *Randle*, 43 F.3d at 225.

> c.    *Illegal Search and Seizure*

Respondent next argues that review of Villarreal's standalone claim about the traffic stop and subsequent search is barred by *Stone v. Powell*, 428 U.S. 465 (1976).  (D.E. 13 at 18-19).  Respondent contends that Villarreal had a full and fair hearing on the Fourth Amendment issue in state court.  (*Id.* at 19-20).

Villarreal responds that *Stone* does not apply to ineffective-assistance claims.  (D.E. 14 at 5-6).

"[W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  This bar applies regardless of whether the defendant availed themselves of that opportunity.  *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978).  The bar does not apply to claims that counsel was ineffective

14

for failing to raise a Fourth Amendment issue.  *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986).

 Here, Villarreal's claim is barred by the Supreme Court's decision in *Stone*.  In this claim, as in the claim by the petitioner in *Stone*, Villarreal argues only that the search that found the drugs was illegal because he did not commit the alleged traffic violation, and that the evidence therefore should have been excluded.  (D.E. 1 at 6-7; D.E. 2 at 4-5, 12-15). However, Villarreal had a full and fair opportunity to raise this argument in state court, and he availed himself of that opportunity before the trial court and on direct appeal.  (D.E. 12-2 at 47-50, 52-53; D.E. 12-8 at 12-15).  Under these circumstances, Villarreal cannot prevail on this claim in a federal habeas petition.  *Stone*, 428 U.S. at 494.  Villarreal is correct that the *Stone* bar does not apply to ineffective-assistance claims, but he does not raise an ineffective-assistance argument in this claim, but rather directly challenges the Fourth Amendment issue.  *See Kimmelman*, 477 U.S. at 382-83.  Accordingly, this claim is barred.

## IV.   CERTIFICATE OF APPEALABILITY

 An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Villarreal has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (stating that a district court may *sua sponte* rule on a COA).

 A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under

§ 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack v. Daniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

Here, because reasonable jurists would not find it debatable that Villarreal failed to state a claim for a violation of a constitutional right, it is recommended that a COA be denied.

## V.      RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's motion for summary judgment (D.E. 13) be GRANTED and Villarreal's § 2254 petition be DENIED.  In addition, it is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted on February 12, 2021.

Julie K. Hampton
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).